WILLIAM S. GREEN'S
ESTATE. } MARCH TERM, 1848.

[PRIORITY OF THE STATE—CONSTRUCTION OF RESOLUTIONS OF THE LEGISLATURE.]

IT is no exercise of judicial power for the legislature to pass resolutions directing credits to be entered upon judgments recovered by the state against a county clerk, and the sureties upon his bond.

The state has control over her own claims, and the legislature may remit forfeitures incurred by public officers who have become debtors to the state, and in cases where they think proper may surrender interest, or allow, as a credit, interest on credits which they may admit should theretofore have been given ; such an exercise of power is no violation of the 4th article of the declaration of rights.

The legislature passed resolutions directing the treasurer "to examine the accounts" of a late county clerk, "and correct the same by crediting him with the commissions allowed by law to county clerks on collections made, and which commissions may have been heretofore withheld because of his delay in making his payments into the treasury within the time limited by law, and with the interest upon the amount of said account," these credits to be "applied to judgments recovered by the state against said clerk, *and his sureties*," "but nothing herein contained shall relieve the defendants in said judgments from costs and the usual commissions to the state's attorney."
HELD—

That by the true constructions of these resolutions the credits to be allowed could not exceed the amount of the judgments mentioned in them, and no excess of such credits could be applied to the extinguishment of other claims due by said clerk, to the state.

These credits are a gratuitous grant by the state, and such a grant must be restricted to its obvious ¦and plain intent, and be construed most favorably for the government.

Two judgments were rendered against a party on the same day, one at the suit of the state, and the other at suit of a private citizen, that of the state, standing first upon the docket. HELD—that the judgment in favor of the state is entitled to priority in payment.

Wherever the state and a citizen have claims in equal degree, and a conflict arises by death or act of the party not having enough to pay his debts, the claim of the citizen must yield to the right of the state.

[The mortgaged real and personal estate of Wm. S. Green, formerly clerk of Anne Arundel County Court, was sold under a decree of this court in this cause, for the purpose of paying the various incumbrances upon it. The bill was filed by the

29*

attorney general, in behalf of the state, on the 6th of July, 1844. Several judgments had been recovered by the state against said Green and Brown & Welch, the sureties on his official bond. The said Green had also executed a mortgage of his real estate to the Farmers Bank of Maryland, to secure an indebtedness due by him to the bank, in which mortgage Matilda E. Green, his wife, united, it being the only conveyance of his real estate in which his said wife did so unite.

On the 10th of March, 1847, the legislature passed the following resolutions. No. 64.

"Resolutions in favor of William S. Green, Robert Welch of Ben., and Samuel Brown, junior.

"*Resolved by the General Assembly of Maryland,* That the treasurer be, and he is hereby authorized and directed to examine the accounts of William S. Green, late clerk of Anne Arundel county, and correct the same by crediting him with the commission allowed by law to county clerks on collections made, and which commissions may have been heretofore withheld because of the delay of said Green in making his payments into the treasury within the time limited by law for the purpose, and with the interest upon the amount of said account.

"*Resolved,* That the governor be, and he is hereby authorized and requested to purchase of William S. Green, the files of the Maryland Gazette, from the commencement of the publication thereof to the time of its discontinuance, and to pay therefor by a credit to the amount of the purchase on the judgment recovered by the state of Maryland against the said William S. Green, Robert Welch of Ben., and Samuel Brown, junior; *provided,* that the sum allowed for said paper shall not exceed the sum of one thousand dollars.

"*Resolved,* That the credits which may be allowed by the treasurer under the first of the foregoing resolutions shall be applied to the aforesaid judgment; but nothing herein contained shall relieve the defendants to said judgments from the costs recovered by said judgments, and from payment of the usual commission to the state's attorney on the sums which may be credited under the foregoing resolutions."

The treasurer, by his construction of these resolutions, refused to credit on the said judgments against Green and his sureties, any thing more than commissions, after the usual rates, on the principal sums for which said judgments were rendered and the interest on the same. The attorney general also, further insisted that these resolutions were obtained by surprise and misrepresentation, and further, that the legislature had no authority to pass them, and that they are void, as being in contravention of the 4th and 6th articles of the declaration of rights.

Brown & Welch, the sureties of Green, insisted that by the true construction of these resolutions they were entitled to have credited on said judgments all the commissions which may have been *at any time* heretofore forfeited by said Green as clerk, and *all* the interest on balances against him which may have been *at any time* heretofore paid into the treasury, and that such was the design and intention of the legislature in passing said resolutions. They accordingly, on the 4th of May, 1847, filed their bill against the attorney general for an injunction, restraining execution on these judgments until the further order of the court, and from a *pro forma* order of the Chancellor, continuing this injunction, the attorney general appealed. This appeal was argued in the Court of Appeals, at its December term, 1847, when the decree was affirmed, ARCHER, C. J. delivering the following opinion of the court, which has not before been reported in any of the Maryland reports.

"The resolutions of the legislature, referred to in the record, are so clearly and unambiguously worded as to leave no doubt of their construction.

"The first resolution requires the accounts of William S. Green, clerk of Anne Arundel county, to be examined and corrected by allowing him for commissions which may have been withheld because of his delay in making payments into the treasury within the time limited by law for the purpose, and also with interest.

"These accounts were kept at the treasury against William S.

Green, and they extended from 1834 until ——. He was to be credited with commissions withheld, and with interest, and these accounts were to be corrected by such credits. It is not intimated that he is only to be credited with forfeited commissions and interest accruing for the time covered by bonds upon which the suits are brought. On the contrary, the clear meaning of the resolution is, that he is to be credited with all forfeited commissions and interest.

"Then the third resolution directs in what manner these credits shall be applied. It is expressly said they shall be applied to the credit of the judgments obtained by the state against Green, Welch and Brown. It is true, the word "judgment" is used in the second resolution in reference to the purchase of the Maryland Gazette, and in the first part of the third resolution, but the proviso in the third resolution speaks of the judgments and clearly shows that the design was to apply the credits to the judgment against the said defendants. As to the application of these payments language could not make the design of the legislature plainer. The resolution is express, and nothing is left for construction.

"There can exist no constitutional objection to the resolution. In its passage the legislature exercised no judicial power. The state was the plaintiff, and the legislature representing the state, might, at her pleasure, give directions in relation to the judgments, and might abate the same by such credits as she pleased to give, as any other plaintiff might do.

"It is objected that the resolutions are void by reason of the fourth article of the declaration of rights, which declares that "all persons invested with the legislative or executive powers of government are the trustees of the public," and that such an exercise of power is a violation of a delegated trust. This objection we do not think has been maintained. Since the organization of the government, powers of a similar kind in regard to the debtors of the state have been exercised without ever having, until now, been doubted or questioned. The state has certainly control over her own claims, and may lessen the severity of her enactments in regard to her public officers who

become her debtors, by remitting forfeitures, and in cases which, in the judgment of the legislature, may seem proper, may surrender interest or allow as a credit, interest on credits which they may admit should theretofore have been given, without being considered as in any manner violating the great trust confided to her.

"But it is further urged that the resolutions are void as having been obtained by surprise, concealment and misrepresentation. The legislature might, certainly, without such imputation, have refused to purchase the Maryland Gazette for $3,500, and yet have been willing to restore to Green his commissions and the interest. As to the operation and extent of this allowance, it is evident they were aware that the result might be to defeat the state in any recovery against Green or his securities on the judgments, for they make provision that the defendants shall not be relieved from costs. *Decree affirmed.*"

In the further progress of the cause, the Auditor stated several accounts, to which, and to his report made on the 26th of May, 1848, various exceptions were filed by the several parties interested, which are disposed of in the following opinion of the Chancellor, in which also the said exceptions will be found to be sufficiently stated.]

THE CHANCELLOR:

This case is brought before the court upon exceptions to the report of the Auditor of the 26th of the past month, and the several questions argued will be briefly considered.

The exception of the Farmers Bank, founded upon the omission of the Auditor to assign to the exceptant out of the proceeds of the mortgaged real estate, the value, whatever it was, of the contingent dower right of Mrs. Matilda E. Green, I think well taken, and this exception is sustained.

The next question involves the construction which should be put upon the resolution of the General Assembly, passed at December session, 1846, No. 64. It purports, upon its face, to be a resolution in favor of Wm. S. Green, Robert Welch of

Ben., and Samuel Brown, Jr., and it appears by the proceedings in the cause that the two latter were sureties for the former, and that judgments were recovered against them all jointly for debts due the state.

These resolutions have received a construction by the Court of Appeals, but I do not understand the interpretation put upon them by that tribunal, warrants the view now taken of them by the counsel of the parties having interests hostile to the state. The question before the Court of Appeals was between Brown and Welch, and the state, and had reference to the extent of the credits which should be given upon the judgments against those parties as the sureties of Green. And it is perfectly manifest from the opinion of the Court of Appeals that all the credits to which, in their view, those parties were entitled, were to be credited upon these particular judgments, and that they never contemplated credits exceeding their amount.

But the point now urged is, that according to the true interpretation of these resolutions, Green, the principal debtor, was entitled to credits going beyond the amount of the judgments mentioned therein, and that the excess, after satisfying them, shall be applied in part extinguishment of other claims due by him to the state. This position, I am persuaded, cannot be maintained, it being to my mind very clear that the legislature never contemplated such a result. On the contrary, the credits which the resolutions direct shall be given are specifically and in terms applied to the judgments of the state against Green, Welch and Brown.

These credits, it will be recollected, at least so far as the interest and commissions are concerned, are mere gratuities to the defendants, Green and his sureties, the state receiving no valuable consideration for them of any description. They are the mere grant of a bounty by the state, and I hold the doctrine to be very clear, that whatever the rule of interpretation may be with regard to grants by the state upon a valuable consideration, and without deciding whether the construction of such grants, and the deeds of individuals should be different,

the construction of a gratuitous grant by the state must be restricted to its obvious and plain intent. The grant of a donation flowing from the bounty of the government must be construed most favorably for the government. See Mr. Justice Story's opinion in the case of *Charles River Bridge* vs. *Warren Bridge*, 11 *Peters*, 590, 597.

If the view of the counsel who urge this construction be correct, then it would follow that if the state had no other claims against Green than the judgments mentioned in the resolutions, that the excess of the credits after satisfying those judgments, would have to be paid him out of the treasury in money. This consequence would be inevitable, though the provision in the resolutions that the defendants should not be relieved from the payment of costs and commissions to the state's attorney, show clearly that in no event did the state purpose to pay anything out of the treasury.

I do not deem it necessary to go into a critical examination of the language of the resolutions, because I think the general intent is sufficiently obvious to make this unnecessary, but I think it quite apparent that when the legislature spoke of crediting Wm. S. Green with commissions which had been withheld from him because of his delay in paying the money due from him into the treasury within the time limited by law, they never supposed they were directing him to be credited with commissions on moneys which he not only had delayed to pay, but which he has not paid to this day. The law says, that if the county clerks do not pay into the treasury within a limited time the money received by them for the state, they shall not be allowed the commissions to which otherwise they would be entitled. In other words, their commissions shall be withheld. Mr. Green had omitted to pay in time, and when he came to pay subsequently, the treasurer withheld the commission. He withheld it because of the *delay* in making the payment, and it was the commissions thus withheld which the legislature intended should be credited, and in my opinion, to push the resolution further, and construe it to mean that credits were to be given upon moneys which never had been paid at all,

would be to carry it much beyond the meaning of those who passed it.

It seems two judgments were rendered against Wm. S. Green on the 17th of April, 1837, one at the suit of the state, the other at suit of Nicholas J. Watkins. They were rendered on cases filed and docketed by consent, that of the state, however, standing first upon the docket. The question submitted is, how are these judgments to be paid? Shall they come in and be paid *pari passu*, or is the state entitled to priority in payment, assuming that the parties, in virtue of their judgments, stand in *equali jure*, which they do if the judgments are to be regarded as cotemporaneous.

Now, I take it to be well settled that the state, by the common law, is entitled to such priority, and that whenever she and a citizen have claims in equal degree, and a conflict arises by death or the act of the party not leaving enough to pay his debts, the claim of the citizen must yield to the right of the state. 2 *H. & McH.*, 198; 3 *H. & McH.*, 171; 1 *H. & J.*, 417. This principle was affirmed by the late chief justice of the Court of Appeals, in the elaborate and able opinion delivered by him in the case of *The State* vs. *The Bank of Maryland*, 6 *Gill & Johns.*, 205, 226. It was said in that case, "that the priority of the state is a rule only in the distribution of the property of the debtor, requiring the debt due to the state to be paid first where the individual creditor has no antecedent lien overreaching it." The state, then, is entitled to her priority, unless there is an antecedent lien, and here there is none. I am of opinion, therefore, that the judgment of the state of April term, 1837, is entitled to a priority over that of Nicholas J. Watkins, rendered at the same term.

Ordered, that the case be, and the same is hereby referred to the Auditor, with directions to state a further account in which the Farmers Bank of Maryland shall be credited with such sum of the proceeds of the mortgaged real estate as may, according to the tables, be an equivalent for the contingent dower interest of Mrs. Matilda E. Green, the widow of William S. Green, she having relinquished her dower to said bank.

He will then correct his statement of the claim of the state of Maryland, according to the treasurer's statement, No. 1, filed on the 16th instant, and will also credit the judgments against Green, Welch and Brown, in conformity with the agreement of the counsel, filed on the 22d instant.

The residue of the proceeds of the mortgaged real estate, after deducting and appropriating to the bank the value of the contingent dower interest will be applied to the payment of the claims of the state, founded upon its judgments of October term, 1836, and April term, 1837, and any balance which may remain of said proceeds after satisfying those judgments will be applied to the payment of the judgment of Nicholas J. Watkins, of April term, 1837.

All exceptions at variance with this order are overruled.

[No appeal was taken in this case.]

Boyle, for the State.
A. Randall, for the Farmers Bank.
Thos. S. Alexander, for Defendants.